ORIGINAL

John Allen Curtis
Texas Bar No. 05285000
The Law Offices of John Allen Curtis
3701 W. Northwest Highway, Suite 169B
Dallas, Texas 75220
(214) 352-6666
(214) 352-7051 (fax)
jacurtis@sbcglobal.net (email)

ATTORNEYS FOR PETITIONER

√L

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 13 2008
CLERK, U.S. DISTRICT COURT
By RR
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **C3 PHOENIX Inc., a Nevada Corporation, and** | § | |
| **C3 PHOENIX Inc., a Nevada Corporation** | § | |
| **A Shareholder of** | § | |
| **DATA RECOVERY SERVICES, Inc.,** | § | |
| **A Texas Corporation,** | § | |
| **DATA RECOVERY LABS, Inc.,** | § | |
| **A Texas Corporation, and** | § | **A DIRECT ACTION AND** |
| **SWIFT TECHNOLOGIES.COM, Inc.,** | § | **A SHAREHOLDER** |
| **A Texas Corporation** | § | **DERIVATIVE ACTION** |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **Civil Action No.:** |
| | § | |
| | § | **3-08CV0814-L** |
| **PAUL CHARLES WALKER,** | § | |
| **LARRY THOMASSON,** | § | |
| **MARYLYN ANDERSON,** | § | |
| **LARRY BOYD, and** | § | |
| **ABERNATHY, ROEDER, BOYD &** | § | |
| **JOPLIN, P.C.** | § | |
| | § | |
| **Defendants.** | § | |

---

**ORIGINAL COMPLAINT**

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW, C3 PHOENIX, Inc.,** a Nevada Corporation, and a share holder of **DATA RECOVERY SERVICES, Inc.,** a Texas Corporation, **DATA RECOVERY LABS, Inc.,** a Texas Corporation, and **SWIFT TECHNOLOGIES.COM, Inc**., a Texas Corporation, here-in-after, as "Plaintiff" or "Plaintiffs" used interchangeably, (the companies are also collectively referred to as "the Companies"), in the above-styled and numbered cause of action and files this Shareholder **Derivative** Complaint, **and** a **Direct** Action against the above-named Defendants and submits as follows:

## I.

## PARTIES

1. **C3 PHOENIX, Inc.**, ("C3" or "C3 PHOENIX" used interchangeably), ("Plaintiff" or "Plaintiffs" used interchangeably) is a Nevada Corporation, with principal offices located at 109 S. Water Street, Henderson, NV 89015 purchased the rights to fifty-percent (50%) of the shareholdings of the Companies between the period March 2004 and the present.

2. **DATA RECOVERY SERVICES, Inc.,** ("DRS") is a Texas Corporation, with principal office was located at 2636 Walnut Hill Lane, Suite 230, Dallas, TX 75229. The Corporate charter was forfeited on February 9, 2007 and the registered agent for service at that time was R. Kirk Newsom at 5949 Sherry Lane, Suite 600, Dallas, Texas 75225.

3. **DATA RECOVERY LABS, Inc.**, ("DRL"), f/k/a Dat-Tec, Inc., is a Texas Corporation, with principal office was located at 2636 Walnut Hill Lane, Suite 230, Dallas, TX

75229. The Corporate charter was forfeited on February 9, 2007.

4. **SWIFT TECHNOLOGIES.COM, Inc.**, ("Swift") is a Texas Corporation, with principal office was located at 2636 Walnut Hill Lane, Suite 230, Dallas, TX 75229. The corporate charter was forfeited on February 13, 2003. A new filing under the same name was filed on March 5, 2003, by Mary Lynn Anderson, and again forfeited on February 9, 2007.

5. Defendant **PAUL CHARLES WALKER** ("Walker") is an individual and citizen of the United States and resides in Dallas County, Texas, and acted as fiduciary of the Companies in a capacity as a Trustee and Receiver for each of the Companies between the period May 14, 2003, continuously to June 29, 2006, and may be served with process at his principle his principal place of business at: 8650 Freeport Parkway S., Suite 150, Irving, TX 75063.

6. Defendant **LARRY THOMASSON** ("Thomasson"), is an individual and citizen of the United States and a resident of Texas, and acted as a fiduciary of the Companies in a capacity as an Officer of Swift and DRS continuously for the period at issue of this litigation between May 14, 2003, and July, 2006, and may be served with process at his residence at: 109 S W A Allen Blvd, Wylie, TX 75098-5119.

7. Defendant **MARYLYN ANDERSON** ("Mrs. Anderson"), is an individual and citizen of the United States and a resident of Texas, and acted as a fiduciary of the Companies in a capacity as an Officer of the Companies for the period at issue of this litigation between May 14, 2003 and August, 2006, and may be served with process at: address unknown at this time.

8. Defendant **LARRY BOYD**, is an individual and citizen of the United States and a

resident of Texas, and acted as a fiduciary of the Companies in a capacity of an attorney working for, and on behalf of, the Companies, continuously between the period January, 2004 to June 29, 2006, and may be served with process at his place of business located at: 1700 Redbud Blvd, Suite 300, McKinney, TX 75070.

9. Defendant **Abernathy, Roeder, Boyd & Joplin, PC**, ("Abernathy") is a Texas Professional Corporation, doing business in Dallas, Texas, and acted as a fiduciary of the Companies, and on behalf of the Companies, continuously between the period January 2004 and June 29, 2006, and may be served with process at his place of business located at: 1700 Redbud Blvd, Suite 300, McKinney, TX 75070.

## II.

## JURISDICTION

10. Jurisdiction is invoked pursuant to Diversity Jurisdiction, 28 U.S.C. § 1332. Citizenship of the Plaintiff, C3PHOENIX, Inc. is of Nevada, Plaintiff brings this action on behalf of all shareholders. Accordingly, diversity jurisdiction is proper as the Plaintiff's citizenship, whom is the representative of the shareholders, controls. See *Snyder v. Harris*, 394 U.S. 332, 340 (1969); *Aetna Cas. & Sur. Co. v. Iso-Tex, Inc.*, 75 F3d 216, 218 (5th cir. 1996).

11. The amount in controversy of this litigation exceeds $75,000.00 (USD); therefore Diversity Jurisdiction is proper. See 28 U.S.C. § 1332(a); *SWS Erectors Inc. v. Infax, Inc.*, 72 F3d 489, 492 (5th Cir 1996); *see also Laughlin v. Kmart Corp*, 50 F3d 871, 873 (10th Cir 1995) (amount in controversy is ordinarily determined by allegations in complaint). Accordingly,

jurisdiction is proper in Federal District Court.

## III.

## VENUE

12. Venue is proper in this District Court in that a substantial part of the events or omissions which occurred giving rise to the claims of the Plaintiff were within this district. See 28 U.S.C. § 1391(b)(2). Venue is proper in this District Court.

## IV.

## PERSONAL JURISDICTION

13. Specific jurisdiction exists when, as here, the Defendants' contacts with the forum state arise from, or are directly related to, the Plaintiff's cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984). A district court has specific jurisdiction if the defendant committed at least one act in the forum state substantially related to the suit, which is the case here as demonstrated herein. Defendants' conduct giving rise to the causes of action within this Complaint occurred within the jurisdiction of this District Court. The appointment of the Defendants to fiduciary positions occurred within the jurisdiction of this District Court, which subjects these Defendants to *in personum* jurisdiction in this district. *Rainbow Travel Serv. Inc. v. Hilton Hotels Corp.,* 896 F2d 1233, 1238 (10th Cir. 1990); *see also Lewis v. Fresne*, 252 F3d 352, 358-59 (5th Cir. 2001) (making a single phone call or mailing allegedly fraudulent materials to or from the forum state qualifies for *in personum* jurisdiction over Defendant). Accordingly, this Court has Personal Jurisdiction over all Defendants named

herein.

## V.

## DEMAND FOR TRIAL BY JURY

14. Plaintiff demands trial by jury in this cause.

## VI.

## STATEMENT OF FACTS

15. **DRL** was first incorporated in the State of Texas in 1980 as Maurice Holdings, Inc. An Amendment was filed with the Texas Secretary of State to change the name of the company to Dat-Tec, Inc. A further Amendment to the Articles of Incorporation were filed with the Texas Secretary of State to change the name of the company to Data Recovery Labs, Inc. As such, DRL is the oldest data recovery services company in the United States having been in continuous operation since 1980. DRL owned all the assets of the data recovery services business, was the lessee of the real estate and paid all the salaries of the data recovery technicians.

16. **DRS** was first incorporated in the State of Texas as Physician Assurance Group, Inc., on April 13, 1994, under Certificate No. 1308629-0. On February 20, 1997, Articles of Amendment were filed with the Texas Secretary of State to change the name of the company to Data Recovery Services, Inc. The Articles of Amendment were approved by the Texas Secretary of State on February 24, 1997. DRS was the service company that billed the customers for data recovery services performed by Data Recovery Labs, Inc. DRS owned no assets.

17. **Swift Technologies.com, Inc.** was incorporated in the State of Texas on November 2, 1999.

18. DRL, DRS, and Swift are affiliated companies and all shared offices at 2636 Walnut Hill Lane, Suite 230 and Suite 245, Dallas Texas 75229 when Paul Charles Walker assumed his court ordered Administration. DRL, DRS and Swift's primary business is the forensic recovery of computer data, DRL, DRS and Swift operated offices in many parts of the world, but primarily within the United States. DRL, during the period at issue in this litigation, was both the oldest and the Second (2nd) largest computer-data recovery company operating in the United States. DRS was an affiliate company of DRL. Swift was an also an affiliate company of DRL.

19. Mr. Terrence Anderson ("Mr. Anderson") and Mrs. MaryLyn Anderson originally founded DRL, DRS, and Swift. The Andersons were equal percentage shareholders in each of the Companies. The Andersons were also the majority shareholders in each of the Companies.

20. In conjunction with the divorce proceedings between the Andersons, the 303rd Judicial District Court of Dallas County, Texas (Cause No. 03-02907-V) on May 14, 2003, pursuant to Section 6.502, Texas Family Code, appointed Defendant Walker as the Receiver of DRS and the other Companies. Pursuant to Rule 695a, Tex. R. Civ. P., the Court dispensed with the Receiver's bond.

21. On or about October, 2003, after court approved mediation, Mr. and Mrs. Anderson and their respective divorce attorneys notified Walker, regarding the agreement on the

disposition of the Companies and/or the assets of the Companies. It was agreed between all parties that the divorce attorneys and Walker would interview a choice of four (4) professional "investment banking" firms and would choose the best candidate from these four. Walker would immediately obtain the services of the chosen professional banking firm, to market and sell the Companies (or assets of the Companies) at the highest possible price. This was especially important because Walker had no experience in marketing or selling a corporation such as the Companies. Further Walker needed someone with experience in selling to obtain a fair and good price for the Companies, or the Companies' assets. It was, therefore, mandatory that a firm or individuals who had such professional experience be utilized. Pursuant to the mediated settlement, it was agreed by all parties that an investment banking firm would be selected and be retained. It was further agreed that upon the retention of one of the professional investment banking firms to market and sell the Companies, Walker would be placed in an employee position, subordinate to each of the Andersons, to maintain the Companies and their ongoing operations while the investment banking firm marketed and ultimately sold the Companies, or the assets of the Companies. The utilization of a professional investment banking firm was a crucial and material course of action, especially in view of Walker's complete inexperience and lack of any training in such dealings. Previously, as of March 25, 2002, an expert corporate valuation company, Business Valuation Services, after an extensive and comprehensive in-depth analysis and evaluation of the companies, placed a market **valuation on the combined Companies at FIFTEEN MILLION ONE HUNDRED THOUSAND DOLLARS**

**($15,100,000.00)**, with DRL encompassing the bulk of the majority of the value.

22. In spite of the mediated settlement agreement, on or about February 13, 2004, Walker decided that he was not going to obtain the services of any outside investment banking firm. Instead, Walker embarked on a scheme and plan to take control of the Companies, and/or the assets of the Companies, himself in one manner or another. Therefore, Walker contracted with a small outside company, D. Latin and Company, Inc. ("Latin"), to provide him a valuation of the Companies. Latin, at Walker's request, drafted a four (4) page cursory "Summary Valuation" of the Companies "as of December 31, 2002, such "evaluation" was dated March 31, 2004. This 4 page "evaluation" reported a valuation of $521,695.00. This 4 page cursory "evaluation" was in stark contrast, and commandingly opposite of the extensive and comprehensive 59 page professional evaluation completed by Business Valuation Services, a national company, (dated March 25, 2002), which independently valued the Companies, or the assets of the Companies, at FIFTEEN MILLION ONE HUNDRED THOUSAND DOLLARS ($15,100,000.00).

23. Instead of providing the district court with the report done by Business Valuation Services, Walker provided the district court with the "Latin" evaluation, purporting to only show the Companies, and/or their assets, worth the lesser figure. Armed with this *mis*-information, and concealment of the more true and realistic valuation of the Companies, Walker then, on information and belief, devised a scheme to, and then put forth a plan, with the aid of Ms. Anderson, Thommason, Latin and others, to *himself* make an offer to purchase the Companies,

and/or the assets of the Companies for $1,100.000, a fraction of the true and realistic market value of the Companies. Rebuffed with that attempt, Walker, with the co-conspirators and aiders in this scheme to breach his fiduciary duties and defraud the shareholders and the Companies, then proceeded to find a buyer which would accommodate Walker after such acquisition. Failing to inform the district court of the higher valuation that had been made on the Companies, Walker, having submitted the lower and patently fraudulent Latin valuation, then arranged for, on information and belief, a company that Walker had previously-known and worked with, First Advantage Corporation, to purchase the assets of the Companies for $2,500,000, and retain him as the head of the Companies' operations at a salary.

24. In furtherance of such scheme to defraud shareholders of the Companies of the proper worth and valuation of the Companies, and the Companies' assets, Walker employed Thomason, an employee of the Companies, to lobby shareholders, namely Mrs. Anderson, to not oppose the previous agreement to employ the professional investment banking firm to obtain the highest valuation of assets for the Companies and for the shareholders. In furtherance of such scheme, Walker further enlisted the assistance of Mrs. Anderson to breach her mediated settlement agreement with Mr. Anderson regarding the employment and engagement of an outside investment banking firm to market and sell the Companies.

25. When Mr. Anderson objected to the unethical attempt by Walker to purchase the Companies himself, instead of acting as a fiduciary on behalf of both the Companies and the shareholders, Walker changed his course of action and scheme a bit, but still pursued the course

of action and scheme to obtain the same results. Walker avoided the outside oversight and review that a professional investment banking firm would have provided, and the independent professional investment banking services that would have been effected for shareholders, as had been originally decided. Instead, on information and belief, Walker worked out an agreement with First Advantage Corporation to sell the Companies' assets at a rock-bottom, unrealistic and fraudulent fire-sale amount of $2,500,000.00, which was substantially below the worth of the Companies, and the Companies' assets. Walker failed to obtain a fair and equitable sale of the Companies and instead put his own interests first, In doing so, Walker negotiated to run and operate the Companies, and the Companies' assets, and reap the benefits there-from, as his original intent had been when attempting to purchase them himself. On or about March, 2005, First Advantage Corporation closed and purchased the assets of the Companies.

26. Now, although First Advantage Corporation had become the owner of the operations of the Companies by way of purchasing the assets of the Companies, Walker, still the Receiver and fiduciary of the Companies themselves, now, on information and belief, took a position of employment with First Advantage Corporation. The position taken by Walker, on information and belief, was a senior officer of First Advantage whose duties included running the First Advantage's newly purchased assets of the Companies. In essence, only the name on the doors of the Companies were changed to First Advantage Corporation and everything else remained the same – including Walker acting in the capacity of the CEO of such forensic data recovery entity. On information and belief, Walker, from the date of his appointment as receiver

to the present, has continuously held the position as the head of the Companies.

27. Walker employed the services of Boyd and the firm Abernathy for the Companies. Boyd and Abernathy racked up egregious and excessive billings from the account of the Companies in legal fees. Such excessive legal fees charged during the period with which Plaintiff was owner of such Companies were hundreds of thousands of dollars per year more than in any previous time in the Companies' histories. Although Mr. Anderson, Mr. Bob Dais, and Plaintiff attempted to obtain records and information from Walker that would describe what exact services, hours, and items that Boyd and Abernathy were purporting to bill such excessive and egregious amounts for, such information was covered up by Walker. Walker prevented access and availability to such material and crucial information which would result in the discovery of these Defendant's conduct and liability to the Plaintiff and shareholders of the Companies. On information and belief, Defendants Boyd and Abernathy billed for services which were not provided, billed excessive time and hours for services, and aided and abetted Walker in Walker's scheme to obtain control and beneficial interest in the Companies and the assets of the Companies. Boyd and Abernathy had a fiduciary duty to the Companies, and the Companies' assets for the benefit of the shareholders of the Companies. They breached that duty. By receiving excessive, egregious, and unmerited fees from the Companies, approved by Walker, these Defendants received, in essence, consideration to breach a fiduciary duty they had to protect the interests of the Companies, while Walker pursued, with their knowledge, his scheme to, take over the Companies, and the assets of the Companies, at a price far, far below

the actual worth of such assets and of the worth of the Companies at such time. Further, in addition, such conduct also entailed the excessive and unmerited legal fees charged and received by Boyd and Abernathy which were paid and accounted for by Walker on the Companies' books as general legal fees (although hundreds of thousands of dollars more per year than what was, or should have been, the normal legal expenses). This action in effect reduced the Companies' net earnings by a significant and material amount, and would make it appear to a cursory review that the price which Walker "had obtained" for the Companies' operations was a realistic range. Such excessive and unmerited fees, in essence, served a dual purpose in Walker's scheme to defraud the Companies and the shareholders of a reasonable market value for their assets. First, by unreasonably and fraudulently lowering the net earnings of the Companies, Walker was able to pass off the price of the sale transaction to First Advantage as being "reasonable." Secondly, it operated, in essence, as a "payoff" to legal counsel to aid and abet, cooperate, not disclose, and fail to act in preventing or disclosing the conduct of Walker in obtaining a market value of the Companies, and the Companies' assets, that would fail to achieve a fair and independent value of such. All of which shows the object of the scheme and conspiracy, which allowed Walker to obtain ultimate control of any resulting sale of such operations, as well as a beneficial interest, either in equity or in position, as such operations transpired. All these things have come true and been effected.

28. At no time while Plaintiff owned an interest in the Companies did Walker, Boyd, or Abernathy notify Plaintiff of any hearings, proceedings, annual meetings, special meetings, or

any other events or notices with relation to the Companies. Moreover, these Defendants actually, and constructively, covered up and prevented Plaintiff from obtaining information which would have enabled Plaintiff to discover the conduct of the Defendants, and to enable the Plaintiff to obtain protections to prevent damages to the Plaintiff and to the Companies.

29. On or about May 19, 2006, Defendants Walker, Boyd, and Abernathy, without providing any notice whatsoever to Plaintiff, applied by Motion to the court administering the divorce proceedings of the Andersons and which provided the authority of Walker to act in the capacity of Receiver of the Companies, and filed an "Application for discharge of receiver and to approve final accounting," which the court subsequently approved.

30. In November, 2004, the district court decreed that Mr. and Mrs. Anderson each held a 50% interest in each of the Companies. With knowledge of this district court determination, Walker, as Secretary of the Corporations, and as a fiduciary to the shareholder's interests, failed to make a record in the stockholder records of the certificates of ownership (shares) in the Companies of Mr. and Mrs. Anderson, nor did he record the number of shares, or issue shares of stock (or replacement shares thereof) representing the court-ordered ownership allocation and division of 50% of each of the Companies to each such party.

31. Mr. Anderson, in February 2004, sold and transferred his beneficial ownership in each of the Companies (DRS, DRL, and Swift) to Mr. Bob Dais. Mr. Anderson notified Walker that he had disposed of his beneficial ownership in the Companies to Dais. Walker had a fiduciary duty to record the accurate ownership of such shares of the Companies as of the date as

of sale to Mr. Bob Dais. Walker failed to do so.

32. In March 2004, Mr. Bob Dais sold and transferred his ownership interest in each of the Companies, and corresponding number of shares, to C3PHOENIX, Inc. Accordingly, in March 2004, C3PHOENIX, Inc. became the owner of what had previously been Mr. Anderson's shareholder interest in each of the Companies. In November 2004, Walker had knowledge and was so advised that Mr. Anderson was no longer the owner, or beneficial owner, of any shares in each of the Companies. Thus, on or about such date indicated above, Walker became aware that Mr. Anderson was no longer owner of such indicated shares of the Companies. Walker had a fiduciary duty to record the accurate ownership of such shares of the Companies as of the transfer dates to Mr. Dais and/or C3PHOENIX, Inc. Walker failed to do so.

33. Although knowing that Mr. Bob Dais, and subsequently C3PHOENIX, Inc., were the owners of the respective shares of each of the Companies, Walker failed to act and failed to record each of these parties as proper shareholders. Plaintiff C3PHOENIX, Inc., asked Mr. Bob Dais to contact Walker. Mr. Dais repeatedly requested Walker to provide corporate information and accountings regarding the ongoing financial and operational information on the Companies. Walker refused to approve the transfer of the accounting information or the corporate information from the Companies Accounting firm, Ward Asel, Co. Walker failed to provide either of these parties any information or requested documents in order for these parties to protect their interests in the Companies as major shareholders. Moreover, Walker purposefully evaded and covered up material information necessary for these parties to adequately know that

their interests were being considered and protected.

34. In the course of Walker's administration if the Companies (DRL, DRS, and Swift), he held the offices of President, Secretary, Officer, Director, and Shareholder. During Walker's administration, Mr. Delzer, an individual who had previously worked for DRS, made a claim that he was entitled to an ownership interest in **DRS**, and thereby, any assets or distributions, respectively, of a pro-rata ownership share of **DRL and Swift**. The district court subsequently found that this party was entitled to an 11.39% ownership interest, and a distribution of assets ***from Data Recovery Services, Inc.'s assets alone***, of the same percentage amount. This individual was not found to own any beneficial control or ownership of DRL. The assets of DRL consisted of the majority and bulk of the total assets of the three Companies (DRS, DRL, and Swift).

35. When Walker disbursed the assets of the Companies, Walker co-mingled the assets of DRS, DRL, and Swift, and instead of disbursing an 11.39% share of *only DRS* assets to Delzer, Walker disbursed an 11.39% share of the assets valuation of all the Companies combined. This action defrauded the shareholders of DRL and Swift of a proper and equitable distribution of the assets of DRL. Such "over-disbursement" paid to Delzer by Walker from the assets of DRL and Swift is $118,000.00. Accordingly, Delzer has received a distribution of the assets of DRL and Swift in the amount of $118,000.00 to which he was not entitled to, and has thereby converted the assets of DRL and Swift to his own use which are legally the property of DRL and Swift and the shareholders of DRL and Swift.

36. Because of the failure of Walker to properly maintain the records and accounts of each of the Companies separately, assets of DRL and Swift were disbursed to individuals who had no legal right to such assets. This conduct has harmed DRL and Swift and the shareholders of DRL and Swift and the Plaintiff by reducing the proper pro-rata share of the assets due the Plaintiff from the Companies by $118,000.00, thereby causing Plaintiff such damage amount.

## VII.

## CAUSES OF ACTION

37. Plaintiff has suffered damages from each of the following causes of action. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein into each of the following Counts:

### COUNT 1: BREACH 0F FIDUCIARY DUTY

38. Each of the Defendants owed a fiduciary duty to the Companies (DRL, DRS and Swift), and to the shareholders of the Companies (DRL, DRS and Swift) by virtue of their respective positions. Defendant Walker as Receiver, as an Officer of the Companies, and as a Director of the Companies owed a duty to the Companies, and owed a duty of express loyalty to the interests of the Companies and the shareholders of the Companies. Walker breached such duties by his conduct as enumerated above, by placing both his own personal interests and financial interests, ahead of that of both the Companies and of the shareholders of the Companies. This conduct and breach of duties caused damages to the Plaintiff and shareholders of the Companies. Similarly, Ms. Anderson and Thommason as officers and employees of the

DRS owed a duty of loyalty to the Companies and consequently also to the shareholders of the Companies, and a duty to act for the exclusive benefit of the Companies. Boyd and Abernathy had a duty of loyalty and a fiduciary duty to the Companies and consequently to the shareholders of the Companies as counsel and attorneys to such companies. By the conduct recited herein, all such Defendants breached the fiduciary duties owed to the Companies and to the Plaintiff and shareholders, such breach having caused Plaintiff and the Companies damages.

39. All of these Defendants by their conduct aided and abetted Walker in his scheme and conduct enumerated above, and breached that duty. Such breach of duty caused the Companies, and consequently also the Plaintiff and shareholders of the Companies damages. Each of these Defendants received fees and compensation by way of payment or salaries in exchange for the discharge of their fiduciary duties owed to the Companies and especially to DRL and Swift respectively. Plaintiff seeks disgorgement of all fees, compensations, or salaries paid to, or accrued by each of these Defendants during the period between May 14, 2003 and June 29, 2006 to the present for their breach of fiduciary duties which were owed to the Companies and to the shareholders of the Companies.

## COUNT 2: BREACH OF CONTRACT

40. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

41. There existed representations and agreements between 1) the Companies and Walker as CEO of the Companies, as Director of the Companies, and as a Receiver/Trustee of the Companies; 2) between Thommason and DRS as an employee and officer of DRS; 3)

between Mrs. Anderson and the Companies as an officer and employee of the Companies; 4) between Boyd and the Companies as corporate and general counsel representing the interests of the Companies; and 5) between Abernathy and the Companies as corporate and general counsel representing the interests of the Companies.

42. Each of these Defendants breached their agreements with the Companies, respectively, in their agreement and understanding to act for, and in the exclusive best interests of the Companies, and in all dealings and business matters which may pertain to the Companies (and DRS in Thomason's case). Plaintiff and the Companies have suffered damages from this conduct of these Defendants.

## COUNT 3: <u>CONSTRUCTIVE FRAUD</u>

43. By way of Walker's (1) failing to disclose that he was "double dealing" the interests of the Companies; (2) failing to disclose his true motives of attempting to take over the Companies at a fraction of their actual worth and/or the assets of the Companies for his own interests; (3) placing his own motives ahead of the interests of the Companies and the shareholders of the Companies and of the Plaintiff, and (4) concealing and manipulating the true net earnings of the Companies by way of approving and allowing unmerited, excessive, and egregious legal fees which were deducted out of the general operating account and general revenues of the Companies, Walker did execute a scheme to accomplish an illegal breach of fiduciary duty. By this conduct, and the conduct of others described above, Walker did commit constructive fraud, and constructive fraud by omission upon the Companies, the Plaintiff, and the

shareholders of the Companies. This conduct has caused Plaintiff and the Companies damages.

### COUNT 4: NEGLIGENCE

44. As specifically set forth in Count 1 above, Defendants Boyd and Abernathy were negligent in failing to adhere to a standard of ordinary care and diligence in acting on behalf of, or for the benefit of, the Companies in their duties as legal counsel and general counsel to the Companies. Such conduct has caused the Companies and the Plaintiff damages.

### COUNT 5: NEGLIGENCE PER SE

45. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

46. Defendants Boyd and Abernathy have violated the code of ethics of attorneys and laws by (1) billing the Companies for services not rendered, (20 failing to act to prevent, (3) failing to inform, and (4) failing to report with proper diligence, the conduct of Walker, as is enumerated above. Such conduct was contrary to the interests of the Companies and of the shareholders of the Companies, and consequently the Plaintiff, and as such Boyd and Abernathy are guilty of Negligence Per Se. The Plaintiff and the Companies have suffered damages from this conduct.

### COUNT 6: CONSPIRACY

47. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

48. Each of the Defendants' conduct, as detailed herein, amounts to, and is a conspiracy of two or more parties to commit illegal or tortious conduct as alleged herein. Plaintiff will show that the Defendants possessed a meeting of the minds for a common goal or

purpose, and by tacit or express agreement, agreed to act in furtherance of that illegal or tortious purpose.

49. Due to the commission of one or more overt, illegal or tortious acts committed for the purpose of defrauding Plaintiff, Plaintiff suffered damages.

**COUNT 7: <u>CONVERSION</u>**

50. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

51. Defendant Delzer did receive and convert to his own use the sum of $118,000.00, such amount representing the assets of DRL and Swift to which he was not entitled to, and for which he gave no consideration. Although having requested Delzer to return to DRL and Swift such property of DRL, and the respective shareholders thereof, Delzer has refused to do so. The Plaintiff has been damaged by this conduct in the amount of $118,000.00.

**COUNT 8: <u>UNJUST ENRICHMENT</u>**

52. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

53. Defendant Delzer did receive and convert to his own use the sum of $118,000.00, such amount representing the assets of DRL and Swift to which he was not entitled to, and for which he gave no consideration. Although having requested Delzer to return to DRL and Swift such property of DRL and Swift, and the respective shareholders thereof, Delzer has refused to do so. The Plaintiff has been damaged by this conduct in the amount of $118,000.00.

## COUNT 12: PUNITIVE DAMAGES

58. Plaintiffs incorporates and realleges the allegations set forth above, such that the egregious and fraudulent conduct and actions of the Defendants, and the bad faith of the Defendants entitle Plaintiffs to recover Punitive Damages. Plaintiffs specifically plead for, and seek, punitive damages in the amount of $5,000,000.00, plus pre- and post-judgment interest on such amount.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear herein, and that upon trial on the merits of the allegations herein made, this Court find in favor of Plaintiff and against the Defendants, jointly and severally, on all counts and claims alleged herein against the Defendants, and thereby award Plaintiff a Judgment against each of the Defendants in an amount to be determined by the trier of fact, actual damages, punitive damages in the amount of $5,000,000.00, plus attorney's fees as may be submitted at trial, plus all costs of court, plus attorney's fees and costs of court which may become necessary upon any appeal taken by any Defendant or Plaintiff, plus pre- and post-judgment interest on the entire unpaid amount of judgment at the highest legal rate, plus Special Damages of any transportation, lodging, or miscellaneous costs which have to be expended by Plaintiff at any point of the litigation for Plaintiff or Plaintiff's witnesses which may become necessary in any portion of this cause of action or discovery thereof;

**COUNT 9: <u>AIDING AND ABETTING</u>**

54. The Defendants aided and abetted one another in accomplishing the conduct as is enumerated within Counts 1 thru 8. Such aiding and abetting caused the Plaintiff damages in excess of the jurisdictional minimum of this Court.

**COUNT 10: <u>AIDING ANOTHER TO BREACH A FIDUCIARY DUTY</u>**

55. The Defendants named in this lawsuit aided another (and others), namely those other Defendants named in this suit as specifically named within each respective Count, as well as with other parties which are not named in this lawsuit, in the breaching of a fiduciary duty or duties that were owed to Plaintiff by those other Defendants and/or parties, such duties as are described in Counts 1 and 2. The conduct of the Defendants in this Count, occurring by and through their conduct as is enumerated in the Facts Section, and as also alleged within all of the Counts above; caused the Plaintiff's damages in excess of the jurisdictional minimum of this Court.

**COUNT 11: <u>ATTORNEY'S FEES</u>**

56. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

57. Plaintiff would show that due to Defendants' conduct as alleged above and the Defendants' unjust enrichment, Plaintiff has employed attorneys to pursue claims related to Defendants' conduct herein. Defendants refuse to pay said amounts. Accordingly, pursuant to the Texas Civil Practice and Remedies Code § 38.001, Plaintiff is entitled to recover his reasonable and necessary attorneys' fees in recovering damages under the Agreement.

PLAINTIFF FURTHER PRAYS THAT in and for **Count 1**, supra, that **in the alternative,** that the trier of fact and the Court enter an Order of Disgorgement covering all fees and compensations which have been paid to, or earned by, each and every one of the Defendants, paid by the Companies between the period between February 13, 2004 and the present date, awarding all said sums paid to the Plaintiff, pursuant to each of the Defendants' respective breaches of fiduciary duties owed to each Plaintiff;

PLAINTIFF ADDITIONALLY PRAYS THAT this Court additionally award any and all other relief to which the Plaintiff may show this Honorable Court a just or equitable entitlement thereto; all such relief and award of judgment as requested with joint and several liability as to each and every Defendant in this action.

Respectfully submitted,

**THE LAW OFFICES OF JOHN ALLEN CURTIS**

BY: ______________________________

JOHN ALLEN CURTIS
State Number 05285000
3701 W. Northwest Highway, Suite 169B
Dallas, Texas 75220
(214) 352-6666 (Telephone)
(214) 352-7051 (Telecopier)
jacurtis@sbcglobal.net (email)

ATTORNEYS FOR PETITIONERS

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF DALLAS §

**BEFORE ME**, the undersigned notary, on this day, personally appeared Robert Dais, a person to which I properly identified as said person. After I administered an oath to him upon his oath, he stated that he is an Officer of C3 Phoenix, Inc., and is authorized to make this affidavit, that the affiant has carefully read the allegations in the foregoing Plaintiffs' Original Petition, and has reason to believe that each and all said allegations are True and correct and within the personal knowledge of all of the affiant; and affiant signs this Verification, pursuant to the TEXAS RULES OF CIVIL PROCEDURE as a Sworn Petition.

Robert E. Dais

ROBERT DAIS,
President
C3 Phoenix, Inc.

**SUBSCRIBED AND SWORN** to before me by ROBERT E. DAIS 9th June on this 9th day of May, 2008.

Amy M. Chambers

Notary Public in and for the State of Texas

AMY M. CHAMBERS
Notary Public, State of Texas
My Commission Expires
April 17, 2011

JS 44
(Rev. 3/99)

ORIGINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
C3 Phoenix, Inc.

**DEFENDANTS**
Walker, Paul Charles
Thomasson, Larry
Anderson, Marylyn
Boyd, Larry
Abernathy, Roeder, Boyd & Joplin, P.C.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)
Las Vegas County Nevada

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Dallas County, TX
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
JOHN ALLEN CURTIS
3701 West Northwest HWY STE 169-B
Dallas, TX 75220 Phone: 214-352-6666

ATTORNEYS (IF KNOWN)

RECEIVED
MAY 13 2008
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC sec 1332, Breach of Fiduciary Duty, Breach of Contract, Fraud, inter alia

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $5,000,000 + CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE NA DOCKET NUMBER

DATE 5/8/2008 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______